IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-02401-RBJ

STEPHANIE PALMER,

    Plaintiff,

v.

FIRST TRANSIT, INC.,

    Defendant.

## ORDER

This case comes before the Court on Plaintiff's Motion for Partial Summary Judgment [ECF No. 25] and on Defendant's Motion for Summary Judgment [ECF No. 26]. The Court has jurisdiction over this action under 28 U.S.C. § 1332(a). For the following reasons, the plaintiff's motion is denied, and the defendant's motion is granted.

## BACKGROUND

On June 3, 2013 Ms. Palmer filed this action in the District Court of Denver County. The action was removed to this Court by defendant First Transit on September 4, 2013 on the basis of diversity jurisdiction. The case arises out of Ms. Palmer's resignation with First Transit and subsequent failure to be hired by the Regional Transportation District ("RTD").

Ms. Palmer began working as a bus driver with First Transit in or around January 2002. In early June 2011 she was called into the office of Operating Manager Carlos Gonsalez after a passenger made a complaint. The complaint stated, in pertinent part: "This is the second time this week that I have ridden this bus and the female driver has her female girl friend sitting on

the wheelbox where nothing is to be. I don't feel comfortable with this driver always having her head turned to look back at her girl friend." [ECF No. 26-7].[1] Upon receiving this complaint, First Transit pulled the security video from the bus for that day. In reviewing the video, First Transit found that not only was Ms. Palmer's friend riding in the wheelbox of the bus, but Ms. Palmer was also using her cell phone while the bus was in operation. *See* Exhibit H (CD Filed Conventionally) [ECF No. 26-8].

First Transit had a strict no cell phones policy that it posted in the driver's room and also discussed in the employee handbook. *See* No Cell Phones Safety Poster [ECF No. 26-5]; Employee Handbook [ECF No. 26-4] at 49, 63–64. The safety poster—entitled "No Cell Phones While Driving Policy"—explicitly stated: "**Cell phone use while driving a passenger vehicle will result in discharge of the driver for the first offense.**" [ECF No. 26-5] (emphasis in original). It also stated:

> Cell phones must be powered off and placed out of sight (the cell phone may not be on one's body) while a driver is operating a passenger vehicle (school bus or revenue/mass transit). It is not acceptable to have the cell phone powered on, even in vibrate or silent mode. Discipline will result for violation of this Policy.

*Id.* (emphasis in original). Finally, the term "driving" is defined as "being in control of a vehicle, even when the vehicle is stationary with the engine running, unless the vehicle is parked in a safe place with the gear selector in Neutral (for manual transmissions) or in Park (for automatic) with the parking brake firmly applied." *Id.*

The issues presented in this case and in these motions for summary judgment surround the conversation that occurred during the June 2011 meeting that led to Ms. Palmer's resignation.

---

[1] This passenger complaint is also attached as Exhibit C to Ms. Palmer's motion for partial summary judgment [ECF No. 25-3]. Because many of the documents attached to the motions are duplicative, the Court will only cite one copy.

While there are certain facts in dispute regarding what was said at the meeting, both parties contend, and this Court agrees, that those facts are not material to the outcome of the case.

Present at the meeting were Ms. Palmer, Mr. Gonsalez, and union representative Darla Rosales.[2]  Mr. Gonsalez began the meeting by showing both women the video of Ms. Palmer on her cell phone.  *See* Deposition of Darla Rosales [ECF No. 26-9 at 3] at 104:13–19.[3]  According to Ms. Rosales, First Transit had been getting "really, really strict" with their no cellphone policy.  *Id.* at 104:21.  Upon viewing the video Ms. Palmer argued that she was not actually driving the bus when she was on her phone, to which Mr. Gonsalez responded "Well, you know, some – you're not supposed to be in the bus."  Deposition of Stephanie Palmer [ECF No. 26-2 at 12] at 225:14–18.

At some point during the meeting Ms. Palmer offered to resign.  What is unclear is why she so offered.  Ms. Palmer contends that she only resigned because Mr. Gonsalez promised her a good reference, and that she would not have resigned otherwise.  However, her deposition testimony conflicts with this position.  The following statements constitute Ms. Palmer's account of how she came to her decision:

> 1. Before the Meeting: "We had one conversation of me and [Mr. Gonsalez] talking, and he mentioned to me, he was like, 'Well, if it proves to be right, you know, our normal procedure' – he was like basically saying, 'You know what the procedure is, Stephanie. If you get fired, you're not rehirable.  If you resign, you're rehirable at RTD.'  And I told him, I said, 'So you're trying to tell me that I need to resign?'  He said, 'I'm not telling you that, but you know how it works.'"  Deposition of Stephanie Palmer [ECF No. 26-2 at 11] at 212:1–10.
>
> 2. During the Meeting and In Response to Being Disciplined for Being on the Phone: "I'm like, I'm not on the – I was like, 'I'm not driving the bus.'  And to me, I saw how

---

[2] Ms. Palmer and Ms. Rosales have both been deposed in this action, though efforts to contact Mr. Gonsalez have apparently gone unanswered.
[3] Because Ms. Palmer attaches deposition testimony with no indication as to the deponent, [*see* ECF Nos. 25-1 & 25-2], the Court will only consider the deposition testimony attached to the defendant's brief.

3

petty that was, and I told him, 'You know what?  Here.  I'm going to resign.  You let me go to RTD, I'll resign.  Just let me go to RTD.'  And he said, 'Okay.'"  *Id.* at 225:19–23 [ECF No. 26-2 at 12].

3. Upon Being Asked Whether Mr. Gonsalez Said Anything Else in the Meeting: "He told me that he would – he said, You'd have – 'When you go over to RTD, I will be your – I will be your reference.  Have them call me and I will be your reference.'"  *Id.* at 226:11–14 [ECF No. 26-2 at 13].

4. Upon Being Asked Whether Anyone Told Her that She Would be Fired: "No.  I just – not knew, but for them coming at me with the bus situation and me being suspended for no reason, I was just – basically I was really just fed up with the whole entire thing.  Just let me go to RTD since I'm not getting no overtime, I'm not getting nothing, fine, just let me go to RTD."  *Id.* at 228:13–18 [ECF No. 26-2 at 14].

5. Upon Being Asked Whether She Could Recall Anything Else Said in the Meeting: "Not offhand, no.  I just remember me asking, 'If I resign, can I go to RTD?'  And [Mr. Gonsalez] said, 'Yes,' and that's all I needed to hear."  *Id.* at 232:19–21 [ECF No. 26-2 at 15].

Notably, Ms. Palmer never testified that Mr. Gonsalez offered to provide her with a reference in exchange for her resignation.  Instead her testimony strongly suggests that she chose to resign because she was unhappy with how she was being treated at First Transit and wanted to work for RTD.  In fact, Ms. Rosales testified that "in a way [Ms. Palmer] had been wanting to go to RTD anyway and stuff because they – they're a lot better than First Transit."  Deposition of Darla Rosales [ECF No. 26-9 at 4] at 106:15–18.  However, Ms. Rosales' testimony differs greatly from Ms. Palmer's account of the meeting.  According to Ms. Rosales, Mr. Gonsalez offered Ms. Palmer a personal reference if she resigned and applied for work at RTD.  *Id.* at 106:1–6.  She added that she and Ms. Palmer "clarified that if [Ms. Palmer] did a letter of resignation, that [Mr. Gonsalez] would do a letter of reference for her and then also give her a personal reference.  And he said yes."  *Id.* at 106:21–24.  That said, it was Ms. Rosales'

understanding that Mr. Gonsalez was offering a personal reference and not an official reference from First Transit. *Id.* at 129:1–13 [ECF No. 26-9 at 8].

Ms. Palmer resigned from her position on June 9, 2011. [ECF No. 25-5]. Immediately thereafter she applied for a bus operator position with RTD. According to Ms. Palmer, RTD representatives promised her that she would be hired once her reference from First Transit came through. Deposition of Stephanie Palmer [ECF No. 26-2 at 33] at 292:20–22. RTD was unable to reach Mr. Gonsalez for his reference and instead communicated with Rebekah Foster, the Human Resources Administrator at First Transit. *See* Declaration of Rebekah Foster [ECF No. 26-6] at ¶¶ 2, 4. Upon request, Ms. Foster informed RTD that Ms. Palmer had been classified as "not rehirable". *See id.* at ¶ 4; Deposition of Stephanie Palmer [ECF No. 26-2 at 34] at 294:7–12. This communication took place over email on July 12, 2011. [ECF No. 26-12]. After this exchange, RTD chose to not hire Ms. Palmer.

Ms. Palmer brings four causes of action against First Transit: (1) Intentional Interference with Economic Relations; (2) Constructive Discharge; (3) Promissory Estoppel/Detrimental Reliance; and (4) Defamation. Ms. Palmer moves for summary judgment on all of her claims except for constructive discharge. First Transit moves for summary judgment on all of the claims. Further, First Transit asks this Court to award it its reasonable attorney's fees incurred in defending against plaintiff's claims for defamation and constructive discharge. For the following reasons, Ms. Palmer's motion is denied and First Transit's motion is granted.

## STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v.*

*Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.*  The Court does not weigh the evidence or make credibility determinations.  *Id.*  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ANALYSIS

**A. <u>Intentional Interference with Economic Relations</u>.**

"Intentional interference with economic relations" is plaintiff's label for two torts that have been recognized in Colorado: intentional interference with a contract and tortious interference with prospective economic advantage.  The Court will analyze Ms. Palmer's claim under both possible causes of action.

*Intentional Interference with a Contract*

"To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract." *Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 871 (Colo. 2004).  In this case, no contract ever existed between RTD and Ms. Palmer.  Ms. Palmer was never an RTD employee and she never received any training or compensation from the company.  *See* Deposition of Stephanie Palmer

[ECF No. 26-2 at 33] 292:15–19.  At most, Ms. Palmer has insisted that a representative of RTD ensured her that she would be hired upon receipt of the reference from Mr. Gonsalez.  Even if this statement were true, and presuming it created an enforceable contract, Ms. Palmer has put forward no evidence showing or suggesting that First Transit was aware of the agreement.  The claim must therefore fail as the burden of proof on the second element has not been met.

*Tortious Interference with Prospective Financial Advantage*

"Under Colorado law, 'the crucial question in determining liability for tortious interference with prospective financial advantage is whether defendant's interference was intentional and improper.'"  *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 622 (10th Cir. 1995) (citing *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 623 (Colo. Ct. App. 1988)).  "Whether the interference is 'improper' depends on the following factors: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties."  *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (en banc)).

Ms. Palmer argues that First Transit tortiously interfered with her prospective employment with RTD.  [ECF No. 25 at 10].  She admonishes First Transit for informing RTD that she was not rehirable.  She claims that because no investigation was ever conducted regarding the allegations against her, her status as not rehirable "is a misstatement of fact." *Id.*  This argument is unavailing.  If anything, the video footage (which this Court has viewed) substantiates the claims made against Ms. Palmer.  Further, simply passing along requested

information is not enough to rise to tortious interference, which requires intentional and improper conduct. No evidence has been put forward that remotely suggests that First Transit acted improperly or had an illicit motive when passing along Ms. Palmer's eligibility status. Further, Ms. Palmer's own deposition testimony indicates that she does not believe First Transit acted intentionally (outside of providing the requested information) in order to convince RTD not to hire her. Deposition of Stephanie Palmer [ECF No. 26-2 at 36] at 303:15–21. The claim must therefore fail.

### B. <u>Constructive Discharge</u>.

"The doctrine of 'constructive discharge' has been developed largely through the federal courts in cases involving unfair labor practices." *Wilson v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 703 P.2d 1257, 1259 (Colo. 1985). Constructive discharge is not an independent cause of action. *Baker v. Baxa Corp.*, No. CIV.A. 09-CV-02034, 2011 WL 650002 at *1 (D. Colo. Feb. 11, 2011). It is a theory upon which an individual can show that she suffered an adverse employment action, which is a typical element of employment discrimination claims. *See Garratt v. Walker*, 164 F.3d 1249, 1255–56 (10th Cir. 1998).

Ms. Palmer argues that an independent constructive discharge action was recognized in *Colorado Civil Rights Comm'n v. State By & Through Sch. Dist. No. 1, Bent Cnty.*, 488 P.2d 83 (Colo. App. 1971). I disagree. In that case the doctrine of constructive discharge was used to persuade the court that the plaintiff suffered an adverse employment action (effectively being fired) in order to prove the final element of her national origin discrimination claim. The case is inapposite to the one at hand. Ms. Palmer is not arguing that her alleged constructive discharge amounted to an adverse employment action, therein supporting an underlying claim of

employment discrimination or other labor law violation. Instead, she attempts to bring an independent claim of constructive discharge, which is not recognized under the law.

### C. Promissory Estoppel/Detrimental Reliance.

To effectively make out a claim of promissory estoppel, the plaintiff must prove the following: "(1) the promisor made a promise to the promisee; (2) the promisor should have reasonably expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his or her detriment; and (4) the promise must be enforced to prevent injustice." *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006) (citation omitted). The promise made "by the employer must be 'sufficiently definite to allow the court to understand the nature of the obligation undertaken.'" *Price v. Pub. Serv. Co. of Colorado*, 1 F. Supp. 2d 1216, 1224 (D. Colo. 1998) (citing *Soderlun v. Pub. Serv. Co. of Colorado*, 944 P.2d 616, 621 (Colo. Ct. App. 1997)).

Ms. Palmer contends that she has proven the four elements listed above and is therefore entitled to judgment as a matter of law. She claims that (1) Mr. Gonsalez made a promise (as an agent of First Transit) that he would provide Ms. Palmer with a reference if she resigned; (2) Mr. Gonsalez should have reasonably expected that his promise would induce her to resign; (3) Ms. Palmer reasonably relied on the promise to her detriment; and (4) the promise must be enforced to prevent injustice because Ms. Palmer would have otherwise fought her termination by filing a formal grievance with her union. The defendant argues that Ms. Palmer's claim must fail for a number of reasons, including that Ms. Palmer cannot show that First Transit (as opposed to Mr. Gonsalez) made a sufficiently definite promise; it was unreasonable for Ms. Palmer to rely on Mr. Gonsalez's statement; and enforcement of the promise would be contrary to public policy.

The Court agrees with the defendant. Notably, through her own testimony Ms. Palmer submits that she decided to resign from First Transit because she was frustrated with the company and because she presumed that she would be able to secure a bus operator position at RTD. She never attested that she resigned because of or in reliance on Mr. Gonsalez's offer to provide a reference. Putting that aside, and drawing all inferences in favor of Ms. Palmer, I still am not persuaded that her underlying claim has merit. First, imagine that Mr. Gonsalez did in fact make a sufficiently definite promise to Ms. Palmer that informed her decision to resign. It has not been shown that he did so as an agent of First Transit. Even Ms. Rosales' testimony, which is the most favorable to Ms. Palmer's promissory estoppel claim, indicates that Mr. Gonsalez made a personal promise to provide a personal reference, not a promise to act on behalf of First Transit in an official capacity. Second, presume that First Transit was bound to uphold the promise. Ms. Palmer cannot show that her reliance on the promise would have been reasonable. While I am not persuaded by any argument that Mr. Gonsalez only promised to provide "a reference" and not a "good reference" (for who would ever seek a bad one?), it was not reasonable for Ms. Palmer to have expected Mr. Gonsalez to lie on her behalf. Even if he had given her a glowing reference, Mr. Gonsalez would have still been required to answer honestly any question regarding Ms. Palmer's status at First Transit. Since her status was set by the company and not by Mr. Gonsalez, *see* Declaration of Rebekah Foster [ECF No. 26-6] at ¶ 7, the answer would have remained the same no matter who delivered the reference: not rehirable. Third, assume that it would have been reasonable for Ms. Palmer to rely on this promise. The promise need not be enforced to prevent injustice. In fact, justice would be badly served by enforcing a promise that would allow a bus operator with safety violations to secure a job with another transit company through omission of her non-rehirable status.[4] As noted earlier, though

---

[4] As to any argument that Ms. Palmer would have filed a union grievance had she not be induced to

10

some facts remain in dispute they are not material; the outcome remains the same even after making all inferences in favor of the plaintiff.

### D. Defamation.

Under Colorado law, a claim for defamation "regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within one year after the cause of action accrues, and not thereafter." C.R.S. § 13-80-103(1)(a); *see also Burke v. Greene*, 963 P.2d 1119, 1121 (Colo. Ct. App. 1998). A cause of action for injury to reputation, such as defamation, "shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. § 13-80-108(1); *see also Burke*, 963 P.2d at 1121.

Ms. Palmer claims that she was defamed by First Transit when Ms. Foster told RTD that she was not eligible for rehire. Complaint [ECF No. 3] at ¶¶ 45–53. As noted above, this communication occurred via email on July 12, 2011. From her deposition testimony, it appears Ms. Palmer became aware of this communication shortly thereafter. *See* Deposition of Stephanie Palmer [ECF No. 26-2 at 34–35] at 294:4–25; 295:1–8. Yet Ms. Palmer did not file her action until almost two years later, on June 3, 2013. Because suit was filed more than one year after the cause of action accrued the defamation claim is time barred.

### E. Reasonable Attorney's Fees.

Finally, First Transit asks this Court to award it its reasonable attorney's fees incurred in responding to the constructive discharge and defamation claims pursuant to C.R.S. § 13-17-101. This statute was passed in response to the ever-increasing problem of burdensome litigation "straining the judicial system and interfering with the effective administration of civil justice."

---

resign, Ms. Rosales testified that Ms. Palmer could have still filed a grievance after resigning. Deposition of Darla Rosales [ECF No. 26-9 at 9] at 134:3–9.

C.R.S. § 13-17-101.  It provides "for the recovery of attorney fees in courts of record when the bringing or defense of an action, or part thereof (including any claim for exemplary damages), is determined to have been substantially frivolous, substantially groundless, or substantially vexatious."  *Id.*  It concludes, "All courts shall liberally construe the provisions of this article to effectuate substantial justice and comply with the intent set forth in this section."

By letter dated October 23, 2013 the defendant communicated with plaintiff's counsel regarding the defects with both the defamation and constructive discharge claims.  [ECF No. 26-13].  The letter cites the relevant statutory law regarding the one-year statute of limitations for defamation claims and an application of that law to the facts of this case.  As to the constructive discharge claim, the letter cites case law in support of its position that constructive discharge is not recognized as an independent cause of action in Colorado.  In conclusion, defense counsel requested that the plaintiff voluntarily dismiss these two claims.  However, the plaintiff chose not to dismiss either of these claims.  On the contrary, plaintiff sought summary judgment in her favor on the defamation claim.  The defendant therefore was required to respond to that motion and include sections on both defamation and constructive discharge in its summary judgment motion.  Ms. Palmer then chose not to respond to the statute of limitations analysis on the defamation claim, but she did contest the position that a constructive discharge claim is not recognized as an independent cause of action in Colorado.  [*See* ECF No. 32 at 14–15].

First Transit argues that it should be reimbursed its reasonable attorney's fees for having had to "conduct written discovery, take depositions, and brief the claims in the present motion, for two claims that should properly have been dismissed" in October 2013.  [ECF No. 26 at 20].  I agree but emphasize that the extra fees incurred because plaintiff did not voluntarily dismiss the claims after being requested to do so must have been both necessarily and reasonably incurred.  I

doubt that much, if any, additional discovery was caused by the presence of the two claims. I doubt that substantial additional attorney time was required to brief the two issues, since the research and analysis had already been done when the letter was written. In short, while I believe it to be important to the civil justice system that courts impose some sanction when claims that lack substantial justification are maintained after a reasonable request is made to dismiss them, I also believe that the party seeking the sanction, and the Court, must take a reasonable and realistic approach to what the true cost of defending against the additional claims was.

## ORDER

It is hereby ordered:

1. Plaintiff's Motion for Partial Summary Judgment [ECF No. 25] is DENIED.

2. Defendant's Motion for Summary Judgment [ECF No. 26] is GRANTED. This civil action and all claims therein are dismissed with prejudice.

3. The defendant, as the prevailing party, is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

4. The Court awards attorney's fees to the extent they were necessarily and reasonably incurred in defending against the constructive discharge and defamation claims after October 23, 2013 jointly and severally against plaintiff and plaintiff's counsel. The Court orders counsel to confer and to attempt in good faith to stipulate to the amount of such fees. Absent a stipulation, the defendant may set the fee issue for an evidentiary hearing.

5. Final judgment will enter accordingly.

DATED this 8th day of July, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge